# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JEROME ANTWON WARREN,**

    **Petitioner,**

v.                                                    CIVIL ACTION NO. 5:15cv117
                                                                     (Judge Stamp)

**CHARLES WILLIAMS, WARDEN,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On September 8, 2015, the Petitioner, an inmate at FCI Gilmer, filed a *pro se* Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order expunging his disciplinary record and restoration of his Good Time Credits. By Order entered October 23, 2015, the Court directed the Respondent to show cause why the petition should not be granted. On October 28, 2015, the Respondent filed a Motion to Dismiss or Motion for Summary Judgment and Response to Order to Show Cause. On October 25, 2015, a Roseboro Notice was issued, and on November 30, 2015, the Petitioner filed a response.

### II. FACTS

On February 22, 2014, at 8:00 p.m., the Petitioner received an incident report at FCI Elkton for violation of Prohibited Act Codes 201, Fighting with Another Person, and 104, Possession of a Weapon. ECF No. 10-2 at 1. The report indicated that on February 21, 2014, an inmate, identified for purposes of this R&R as John Doe, was observed entering Cube B02-031 at which time John Doe and the Petitioner immediately started striking each other about the upper torso area. John Doe used what appeared to be a lock in a sock and the Petitioner used a cane. Both inmates struck each other

1

numerous times with the weapons. ECF No.10-2 at 1. The Lieutenant assigned to investigate the incident advised the Petitioner of his rights on March 11, 2014. ECF No. 10-2 at 2. According to the incident report, the Petitioner told the investigator: "That inmate came looking for me, I was just using self-defense." Id.

On March 13. 2014, a Unit Disciplinary Committee ("UDC") hearing was conducted. ECF No.10-2 at 1. During the hearing, the Petitioner stated John Doe came to his cube with a lock and sock and can of soda after a verbal altercation at the computer. The Petitioner told the UDC to check the camera. Id. Due to the severity of the incident, the UDC referred the charges to the Disciplinary Hearing Officer ("DHO") for disposition and sanctions. Id. The UDC recommended the maximum available sanctions at the DHO level to deter future misconduct if the Petitioner was found guilty. Id.

The Petitioner was provided a Notice of Disciplinary Hearing Before the DHO on March 13, 2014. ECF No. 10-3. The Petitioner indicated that he did not wish to have a staff representative and did not wish to have witnesses. Id.

On March 31, 2014, a DHO hearing was conducted. ECF No. 10-5. At the hearing, the DHO advised Petitioner of his rights. The Petitioner provided the following statement at the hearing: "Yes that is true; I was fighting with inmate John Doe. Yes that is true; I used the cane as a weapon to hit him with during the fight." Id. at 1. The DHO found that the Petitioner committed the Prohibited Acts of Possession of a Weapon, Code 104 and Fighting Another Person, Code 201. Id. at 3. With respect to Code 104, the DHO sanctioned the Petitioner with 40 days loss of good conduct time, 360 days of disciplinary segregation, suspended pending 180 days clear conduct and 180 days loss of commissary privileges. Id. at 4. With respect to Code 201, the DHO sanctioned the Petitioner with 27 days loss of good conduct time, 180 days disciplinary segregation, suspended pending 180 days,

and 180 days loss of visitation privileges. Id..

### III. CONTENTIONS OF THE PARTIES

The Petitioner maintains that his conviction for disciplinary code infractions does not comport with the 5th Amendment right to due process and is not based on the "some evidence" standard established by the United States Supreme Court. More specifically, the Petitioner alleges that the records maintained by the BOP establish that he was the victim of an assault by another inmate, who used a contrived weapon against him in the attack. Conversely, the Petitioner maintains that he deflected the assault as best he could with an ordinary item. ECF No. 1 at 5. For relief, the Petitioner seeks an order vacating his conviction for Code 104 and 201 violations and restoration of the 67 days of good conduct time related to this matter. Id. at 8.

In response to the petition, the Respondent argues that the Petitioner received the rights afforded him pursuant to Wolff v. McDonnell, 418 U.S. 539 (1974). Accordingly, the Respondent maintains that the petition should be dismissed.

In his reply to the response, Petitioner notes no objections to the Respondent's statement of facts except as to its reference to his using a weapon and fighting. The Petitioner continues to maintain that he was "deflecting the assault with a non-altered, non-contrived, institution-issued common object which may not be reasonably or fairly ascribed to be a weapon." ECF No. 17 at (emphasis in original omitted). In addition, the Petitioner maintains that the DHO provides a misleading account of his hearing testimony when he reported that he acknowledged that he was fighting with inmate John Doe and used a cane as a weapon. The Petitioner argues that his initial statement in the investigation accurately reflects that he was just using self defense. Finally, the Petitioner argues that he did not "encounter" inmate John Doe, but was "assailed" by that inmate and that the cane cannot be fairly said to have been "weaponized." ECF No 17 at 4. Therefore, the

Petitioner argues that there is no evidence to support either Code violation.

## IV. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass

4

v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere

5

speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that Petitioner was provided due process as contemplated by Wolff.

First, Petitioner received written notice of the charges at least twenty-four hours in advance of the DHO hearing. It is undisputed that Petitioner received a copy of the Incident Report on February 22, 2014, and the DHO hearing was on March 31, 2014.

Second, Petitioner was provided a written statement by the DHO as to the evidence relied

6

on and the reasons for the disciplinary action. More specifically, the hearing report notes that the DHO based his decision on the following evidence: (1)the reporting officer's statement; (2) the Petitioner's testimony at the DHO hearing; (3) the photographs and medical assessments of the Petitioner and John Doe depicting their physical status as a result of the February 21, 2014 incident, (4) photographs depicting the homemade weapons; (5) supporting memoranda, all dated February 21, 2014, submitted by six BOP employees as responding staff members to a call for assistance as the result of the incident; and (6) a supporting memorandum from Lt. Winewski, dated March 27, 2014, detailing the delays in processing the incident report.[1] By way of explaining the reasons for the disciplinary action, the report states that:

> The action/behavior on the part of Fighting with another person, and Possession of any weapon threatens the health, safety, and welfare of not only himself, but all persons, whether another inmate or any other person, who are involved in the act. This will not be tolerated. Past evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct. The sanctions imposed by the DHO were taken to inform the inmate that he will be held responsible for his action/behaviors at all times.
>
> The sanction involving Disciplinary Segregation was taken to deter any further negative behavior, and to enforce the standard of inmates being held responsible for their actions. A total of **450 Days** Disciplinary Segregation has been suspended **(for this incident report)** for a period of **180 days clear conduct**, and as a motivation to refrain from **ANY** negative behavior. Any committed infractions during this period; and you will be required to serve this **450 days** Disciplinary Segregation in full.
>
> The sanctions imposed involving Disallowance of Good Conduct Time and Loss of Privileges– Visit & Comm, was also taken

---

[1] The incident report was suspended on February 22, 2014, to amend section 11 to clarify the facts of the incident, and pending an AUSA/FBI referral. On February 22, 2014, at approximately 8:00 p.m., the Petitioner was issued a copy of the amended incident report. On March 11, 2014, the SIS released the incident report for administrative processing, due to the incident being declined for prosecution by the AUSA/FBI. ECF No. 10-5 at 3.

to enforce a standard of inmates being held responsible for their actions. Past evidence has supported that this type of behavior can be destructive to the Security or Orderly Running of a BOP Facility, and ABSOLUTELY will not be tolerated.

Also, the DHO considered the seriousness of your violent disruptive behavior, your willingness to accept FULL responsibility for your action, and the FBOP having a **ZERO tolerance** for this type of behavior when determining your sanctions imposed for this current infraction. You should be aware any future violent disruptive behavior, will be cause for the DHO to impose **significant progressive sanctions**, in an effort to express the importance, of abiding by **ALL** institution rules, and regulations. The DHO expects these sanctions will serve to deter you from similar misconduct in the future and convince you to abide by all institution rules and regulations.

ECF. No. 10-5 at 4. (Emphasis in original).

Third, the Petitioner was provided with the opportunity but waived his right to call witnesses. Fourth, the Petitioner was advised of his right to staff representation but declined said right. Finally, Petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[2]

Where, as here, the due process requirements of Wolff are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). In Hill, a prison disciplinary board determined that three inmates violated prison rules by assaulting another inmate. The prison disciplinary board's conclusion was supported by little evidence: a "guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area." Hill, 472 U.S. at 456. Despite little evidence

---

[2] See 28 C.F.R. § 541.16(b).

supporting the conclusion, the Supreme Court held that the evidence was sufficient because "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. In particular, the Court stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching his decision, the DHO considered the incident report, investigation and the Petitioner's statement at the hearing. In addition, the DHO considered the photographs and medical assessments depicting the physical status of inmate John Doe and the Petitioner. The DHO also considered photographs depicting the homemade weapons found in possession of each inmate. In addition, the DHO considered supporting memoranda authored and submitted by six staff members who responded to a call for assistance as the result of the altercation. Finally, the DHO considered a memorandum submitted by Lt. Wineski, dated March 27, 2014, detailing all of the delays in processing the incident report, including a re-write to clarify the facts and suspension of the incident report pending review by the FBI and the United States Attorney for possible prosecution. After considering all of the evidence, the DHO found that the Petitioner had violated Codes 104 & 201. So long as there is evidence to support the DHO's determination, it must stand. See Superintendent at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which a rational conclusion could be drawn that the Petitioner committed the act as

charged.

In reaching this conclusion, the Court recognizes that the Petitioner raises the argument that he was not "fighting," but instead, was merely defending himself. However, inmates do not have a right to raise self-defense as a defense in the context of prison disciplinary proceedings. Jones v. Cross, 637 F.3d 841, 847-48 (7th Cir. 2011) (citing Suggs v. Jordan, 485 F.3d 934, 938-39 (7th Cir. 2007)); Accord Rudd v. Stansberry, C.A. No. 3:10cv481 – HEH, 2011 WL 2970925 at *3 (E.D. Va. July 20, 2011). A DHO is "under no constitutional obligation to allow [an inmate's] claim that he was merely defending himself to serve as a complete defense to the charge of assault." Jones, 637 F.3d at 848.

In addition, the Court recognizes that the Petitioner is advancing the argument that he did not have a weapon, but rather, used a cane to defend himself. The Petitioner explains that "[a]ll reasonable people understand that to weaponize requires a measure of forethought (such as placing a padlock inside of a sock)." ECF No. 17 at 4. However, Code 104 simply provides that "[p]ossession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, **or any instrument used as a weapon**" is a prohibited act.(emphasis added). The DHO defined possessing a weapon as to "have on one's person or under one's dominions, any instrument used as a weapon." ECF No. 10-5 at 3.The Petitioner cites no authority and the Court can find none for the proposition that an article rightfully in a prisoner's possession cannot be used as a weapon without premeditation.[3]

## VI. **RECOMMENDATION**

---

[3]The Court can well imagine any number of items commonly found within a prison that could be used as weapon without some adaptation. For instance, crutches, brooms, mops, pots, pans, bed linens, steam irons, typewriters, etc., are all items that could be "weaponized" at the very moment of an altercation.

10

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss (ECF No. 9) be **GRANTED**, and the Petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to provide a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: April 25, 2016.

                                                           /s Robert W. Trumble
                                                          ROBERT W. TRUMBLE
                                                          UNITED STATES MAGISTRATE JUDGE